Alright, our first case for today, United States v. Acevedo-Tolentino. Mr. House. Thank you, Chief Judge Stewart, and may it please the Court. My name is Evan House. I'm here on behalf of Jose Luis Acevedo-Tolentino. Your Honors, the District Court simply did not have authority to order Mr. Acevedo to register as a sex offender for 15 years as a separate stand-alone component of his instant federal sentence. Because the District Court lacked the authority to impose that order, it is unlawful and this Court should vacate it. The thing that the government misses about this case is that it's not about the punishment or it is rather about the punishment the District Court was lawfully allowed to impose for the instant federal offense. It's not about the whether or not Mr. Acevedo has a future requirement to comply with civil regulatory scheme that is SORNA. If you just look simply to the statutory punishment that is available for this offense, the universe is actually quite small. Under Section 1470, the actual statute of conviction, you can be punished from anywhere between zero to 10 years. Under Section 3571, up to $250,000 fine. Under Section 3013, $100 special assessment. Under Sections 3583 and 3559, zero to three years supervised release. And then, of course, under the Mandatory Victim Restitution Act, if there was any loss approximately caused by this offense, the District Court had statutory authority to impose restitution. There is no statutory authority in SORNA or anywhere else to order compliance with SORNA, much less what was imposed here, which is actual registration for 15 years on a defendant as a basis for punishing him for the instant federal offense. And we can look to, if the court needs, Section 3582 to see that Congress absolutely knows how to authorize orders like this. Under Subsection E of 3582, Congress has given express authorization when an individual is convicted of a RICO offense or a drug offense under Title 21. That statute says that if those two predicates are there, then the court may order the defendant not to associate or communicate with a specified person if there's probable cause to believe that that association or communication is for the purpose of continuing a criminal enterprise. So that's an example of Congress giving statutory authorization to, for a District Court to make this kind of extremism. Is there any exception in SORNA? There are several exceptions in SORNA. Is there any exception in SORNA from registration for defendants as to whom there is no supervised release? Your Honor, that's not, there's not, but there's not, that's not an issue in this case. So we're not in any way challenging the fact that Mr. Acevedo has a future prospective duty to register. What's your problem? How does your client have an appealable issue here? If he knows he has to register and the judgment says he has to register, how has your client been adversely affected by that judgment? Judge Jones, there's several ways that the client's been adversely affected by the And that court order could, if enforced in the future, result in criminal contempt proceedings. Well, he's in prison right now, isn't he? He is, Your Honor, but this order doesn't begin to run until he's released from prison. So he will be under a present obligation at the time that he is released from prison. It is right. But you just conceded that he'll be under that obligation regardless, right? Indeed. But this is, this would be extra punishment above and beyond the due. It's not imminent. It's the, that's only theoretical. What other punishment? Your Honor, just to fight the premise a little bit, Spencer v. Kimna recognizes that when it comes to criminal convictions and sentences, the defendant does have a present interest in even future consequences that are unlikely to occur. And so this is one of those things where, you know, of course, Mr. Acevedo is my client and I have advised him, and I don't think it breaks attorney-client privilege, for me to tell you this, that he shouldn't come back. Well, no, he shouldn't come back, but that's a separate thing altogether. The other point is the court didn't, didn't assess supervised release. If it had assessed supervised release, most likely you would have appealed that on the grounds that he was going to be deported. No, Your Honor, we don't ever. So, but, well, we've seen, we've seen those a number of times. But the point is, the fact that he didn't get supervised release is not a detriment to him, correct? Of course, but that's not what we're here arguing about. Judge Jones, I filed over 100 Anders briefs explaining why the imposition of supervised release on an alien defendant has, creates no non-frivolous issue. And that's exactly what I would have done in this case. The issue before this Court is whether or not it was lawful for the judge to order an extraneous supervised release, excuse me, registration requirement when it did not order supervised release. It would be a mandatory component of supervised release, but there was no supervised release. But let me get back to the other interest, because beyond compliance with the court order, which, and I didn't get to finish with that, but the collateral bar rule, which is a ingrained rule in the criminal and civil law, says that if we don't challenge this order now, if there were criminal contempt proceedings in the future, we would be precluded from challenging the validity of the order at those proceedings. What is the difference between imposing this as a condition of the judgment and the fact that if he came back into the United States illegally and had not registered under SORNA, he would be subject to prosecution? The difference is in the latter instance, the executive would have the authority to decide whether or not to bring that prosecution. It would not be a judicial function. This creates a judicial layer onto that duty. Well, of course, it doesn't execute itself automatically. We don't go out and arrest these people. But you can. No, we can't without the intervention of the U.S. attorney bringing a contempt charge. That's not true. That's the Louis Vuitton case that I cited in the brief clearly held that the district court has the authority to initiate criminal contempt proceedings on its own and may even hire, or excuse me- Talk about, I mean, that's getting into the kind of theory. Name me a case where a court has ever initiated criminal contempt on its own against a defendant that it doesn't know was illegally present in the United States. United States versus Dixon is a 1993 case for the United States Supreme Court. Justice Scalia writing for the majority held that the double jeopardy bar applies to criminal contempt proceedings that are based on an offense that is later bought by the United States attorney. In that case, Dixon had violated a court order not to, I believe it was, he committed an assault while he was on pretrial release. And so the district court initiated criminal contempt proceedings. He was found guilty under those criminal contempt proceedings without a jury. And whenever- But he wasn't an illegal alien whom the court didn't even know was in town, right? This was someone under supervised release who violated the conditions of supervised release, presumably because the probation officer found out about it. Just to be clear, it wasn't supervised release, it was pretrial detention. The difference being that it would be punished- He's still under supervision by someone official. That is true, and we are talking about, with respect to the single interest of contempt, we are talking about the future possibility that if he comes back, he could be subject to two different types of criminal proceedings. But you just said he can't because that would be double jeopardy, and I would be inclined to agree with you. You're right, that's another reason why the district court hadn't thought this particular order through. Because if the district court did initiate criminal contempt proceedings and did punish him for violating this order, it would preclude, or there would be an argument that it would preclude the United States attorney from punishing him for a SORNA violation after that. It would depend on which came first. Suppose the district court had imposed as part of the judgment that having been convicted of this crime, this person could not legally possess a weapon under 924, whatever it is. Would that be illegal, too? If it was not a condition of supervised release, yes, it would be, because that would be a order for the defendant to comply with the law in the future, and it would be no different. Just like the order that happened in this case would be no- Order to pay a fine is something that has to be complied with in the future, too, and an order to pay restitution has to be complied with in the future, so I don't see where your argument goes. The argument goes, Judge Jones, that the difference is there's statutory authority for a district court to order an individual to pay a fine. There is no statutory authority for the district court to order Mr. Acevedo to pay his taxes or to maintain auto insurance. These are all civil regulatory schemes that exist that individuals have to comply with and for which there could be criminal penalties for failure to comply. But nobody would say that a district court could order, as part of a criminal sentence for attempting to transfer obscenity, that the defendant pay his taxes in the future on pain of contempt. And so if you're not satisfied with the contempt, the future possibility of contempt, there are other interests here. This court has made clear, it's irrefutable in its opinions, that a defendant has a present interest in ensuring that his judgment, the official records of his conviction and sentence, are correct. This court has remanded for correction of the statement of reasons on numerous occasions. I cited one in the brief, the Lombaris-Trevino case, but I could have done a string cite. And an individual has an interest in maintaining correct records. And in this case, it's not just correct, it's lawful. He pled guilty as a asset to a transfer of obscene material to a minor in violation of 18 U.S.C. 1470. What would be incorrect about his being required to register under SORNA, which you acknowledge he is required to do? Nothing is incorrect about that, but that is a separate statutory requirement imposed under a civil regulatory structure, Judge Jones. We're talking about the punishment that may be imposed as part of a violation of a federal criminal law. It is a necessary consequence of this particular violation that an individual must register in the future, but it is not a piece of the punishment that may be imposed. That's the difference, that's all we're saying here. I'm not attempting in any way to downplay the seriousness of Mr. Acevedo's criminal conduct. He got very lucky in this case. He got very lucky in his sentence, too, I might add. I agree with that, Judge Jones. If he had, if the government hadn't misplaced some of the evidence for the enticement charges, he would have been looking at a ten year mandatory minimum. And so we're not here making some grand argument about that this was unfair in any way, all right? But the only thing we're saying is that this was not something that the district court had a lawful ability to impose. And- Speak to that. I mean, Mr. Rodriguez was his counsel. The objective was the level of the objection sufficiently to put the court on notice of precisely the concern that you articulate here. Chief Judge Stewart, I think that it was, but I will say that it could have been a better objection. It could have been more complete. It could have specifically identified. The problem is, is the attorney was reacting to something that isn't lawfully, I guess that doesn't really exist. And so it is hard to kind of come up on the spot with an objection to an order that you've never encountered before. But I will also- Was it a public defender? It was, Your Honor. It was a trial attorney in our office named Rudy Rodriguez. And I believe, again, the objection was made. The district court said, overruled the objection. And it's clear from the district court's response that the district court at least understood us to be arguing that this wasn't something that we believed the court could impose. The court said, well, if he doesn't come back in the future, then it won't be a problem. And we agreed that that's true. But that- I don't know if that information was sufficiently enough to alert the district court where I'm headed is what the standard review here. Is this a plain error inquiry about us or, I mean, you've candidly acknowledged, perhaps could have been more explicit, but where I'm headed is what's our standard review? I know we determined that, not you, but are we looking at plain error or is it a de novo review? Judge Smith, or excuse me, Chief Judge Stewart, our position is absolutely that this was preserved. However, even if it wasn't preserved, the standard review would be de novo because this is a claim that it's an unlawful sentence. And so because, and in fact, in the legal case that Judge Higginson just issued on Friday, it's number 1611330, this court recognized that the requirement that an individual, or that a sentence, an unlawful sentence is jurisdictional. And so an individual can't even waive, in an appeal waiver, the right to have a lawful sentence imposed. What's that case? Leal, United States versus- Leal. It's probably Leal, yes, Your Honor, I apologize. And the number is 1611330 for the court's clerks. And so we do think that this was sufficiently preserved, and I will continue the rebuttal. Thank you, Your Honors. All right, thank you, sir. You've served the rebuttal. All right, Mr. Berry. Richard Berry for the United States. Good morning. May it please the Court. I would respectfully submit, as I did in the brief, that Judge O'Farrill did precisely what he was supposed to do in this case. Under 5D1.1, the court is discouraged from imposing the term of supervised release in a case involving a deportable alien, who will likely be removed from the United States. Obviously, that was the case here. The exception to that in the application notes to 5D1.1 is that the court may impose a term of supervised release if the court feels it would add additional deterrence and protection from the illegal alien. That is, the illegal alien presents a substantial likelihood of return. During the sentencing process, Judge Olvera elicited and received a promise from Mr. Acevedo that he would not return. He took Mr. Acevedo at his word and elected not to impose a term of supervised release. He then stated, I will, however, follow the prosecutor's recommendation and impose the 15-year SORNA registration requirement, referring to the fact that a violation of 18 UIC 1470 is a tier one SORNA offense under this court's opinion in Sheffield. In essence, Judge Olvera did nothing other than what is already required in the SORNA statute. Mr., as Judge Jones said, Mr. Acevedo is required by SORNA section 2913 to. That's not right. 29, I beg your pardon. No, that's right. Section 20913. He is required to register. He's required to register in the jurisdiction of conviction, in the jurisdiction where he resides, and in the jurisdiction where he is a student. In this case, since he is in prison, he will be required to register prior to his release from prison. And then, in all likelihood, he will be deported. The reference in Mr. Acevedo's brief to the 15-year requirement being excessive is a red herring. Under the clean slate doctrine, if an individual complies with several sets of requirements, he can have the 15-year registration period reduced to ten years. In this case, that is a completely moot point. Mr. Acevedo is a citizen of Mexico. He is not a citizen of the United States. He cannot return. He cannot return for ten years, ten months, ten days, or ten hours. Any return would be a 1326B2 violation. If he's in one location for a period exceeding 72 hours, that would be a SORNA, a failure to register under SORNA violation under 18 U.S.C. Section 2250. Well, Sonny, aside from the potential, what is the consequence, if any, of this being in the judgment as opposed to a separate offense if he returns illegally? Judge Jones, I would respectfully submit that there is no consequence. The entire argument about being held in contempt by Judge Olvera is speculative at best. Totally speculative, but even if you're in criminal contempt, you can only be put in jail for one year, two years, right? That is correct, Your Honor, and assuming that this was in the nature of civil as opposed to criminal contempt, he could purge the contempt by registering under SORNA. It would have nothing to do with a separate criminal prosecution under Section 2250 failure to register under SORNA. In any event, in a worst-case scenario, even if the inclusion of the requirement was error, it was harmless error as trial defense counsel admitted. Judge Olvera entertained an argument for a downward variance to a year and a day. He respectfully refused to agree with that variant, to impose that variance. He sentenced Acevedo to the guideline maximum 27 months. Defense counsel remitted the special assessment, waived the fine, and then said, I'm going to impose the 15-year SORNA registration requirement. Defense counsel thought about it for a second and then said, out of an abundance of caution, I'll object. Judge Olvera then said, if he keeps his word, meaning if he follows his promise not to return to the United States, as is required by law, it's a moot point. And defense counsel agreed, that's correct. It would be a moot point. If he does not return to the United States, the requirement set out in the Statement of Reasons would be completely moot. You know, the same could be said of a restitution order. Well, frankly, that's true, Your Honor, and in cases of deportation, it is largely a moot point. Right. You can't collect outside the United States in the overwhelming majority of cases. If he comes back, his biggest problem is 1326 and not the SORNA requirement. Your Honor, that's an issue problem with the 1326. Yes, sir, Your Honor. Yes, sir. The reason for my hesitation was I was trying to mentally calculate the guidelines for the two violations. I honestly don't know. The 1326B2 is a maximum of 20 years. The 2250 violation is a maximum of 10 years. I suspect that you are correct. I suspect under his facts, the illegal reentry guideline would be the higher of the two. But in any event, he would absolutely be amenable to prosecution under 1326B2 for illegal reentry after deportation and under 18 U.S.C. 2250 for failure to register under SORNA. What's the harm if we were just to say it was error, it's harmless, but it's stricken from the judgment? What's the problem with that? Essentially none, Judge Owen. He's still required to register under SORNA by the provisions of SORNA. But why is it an error? Well, my argument is it's not an error. I, Judge Owen, said. Well, and be more precise about your argument because you've been asked about standard review and you've been asked about the assumption that it's an error. Why is it not an error? I would argue that it's not an error because Judge Olvera simply included within the order what Mr. Acevedo is required to do under SORNA. He is required to register as a sex offender. What in the law says that the judge cannot add that to the judgment? Nothing that I'm aware of. Because the whole point of SORNA is to add a measure of responsibility to a person who has already been convicted of a sex crime. Yes, Your Honor, that is correct. It is designed to sweep in all sex offenders. I mean, you can't prospectively say that if you violate SORNA, you're going to jail for an additional two years or whatever, and you obviously can't do that. But it's, to me, it's six of one, half dozen of another, whether the judge pronounces this in the judgment or in terms of supervised release. And I'm not, I don't see where the law prohibits the judge from doing it in the judgment. Well, yes, Your Honor, and essentially that's my argument. There is no term of supervised release because he's a deportable alien, but there's nothing that says the judge can't include the requirement for SORNA registration, since the requirement. There's nothing that says he can, and there's nothing that expressly says he can. That is true, Your Honor. There is nothing that expressly states either way. He is expressly required to register under, I don't know, I always forget this section. I believe it's. That's what I meant. There's nothing expressly prohibiting what occurred here in terms of the way it was articulated. There's nothing expressly in the guidelines of statute that otherwise bars per se what the trial judge did here, right? Yes, Your Honor, that is correct. On the other hand, there's also nothing that specifically authorizes it either, so it's kind of. I believe that is correct, Your Honor. But to me, I mean, the whole, you know, you go back to what is supervised release. Supervised release is part of the judgment of conviction. The terms of supervised release are a term of months. What does it do? After it's something in lieu of additional imprisonment or in lieu of an additional fine. You know, it is part of the entire mix of the punishment that is meted out. And therefore, it seems to me, if a judge were to put every bit of supervised release into the form, into whatever the form is of the judgment of conviction, it would make no practical difference. And that's why I say it's clearly not prohibited unless I'm missing something in the law. But if this is just a matter of which form in the judgment does it go into,  Where am I wrong? In this instance, I would respectfully agree, Your Honor. Supervised release is designed to implement the majority of the directives in 3553A while reintroducing the now released convict back into society. It's designed to provide guidance and assurance of no further illegal conduct. It provides more rigid framework than simply being at large in the populace. And in this case, for the typical defendant, they're still in the United States and under supervised release, and they have reporting requirements and a whole list of conditions that they're required to follow. In this instance, he's a deportable alien. Theoretically, in the ordinary course of business, when he's released from the MP, he'd be deported. He doesn't get a bigger deal because he's a deportable alien. I don't think that's critical. Well, no, and I would certainly agree, Your Honor. As I say, all Judge O'Vera has done is set out in the Statement of Reasons what's already codified in SORNA, the requirement that he register. Although, of course, as Chief Judge Stewart said, if he returns, that will be, at most, half his problem, the other half being, of course, the fact that he's illegally reentered after deportation. So I would respectfully submit that there was no error in including something that he is required by statute to do in the Statement of Reasons. And in a worst-case scenario, it is harmless, as trial defense counsels already agreed. If he follows his promise to Judge O'Vera and does not return, it's a moot point. But first and foremost, there was no error in putting something in the judgment that Mr. Acevedo is already required to do. So in this instance, assuming he never comes back, you know, no harm, no foul, I suppose. So help me think down, in a different scenario, different case, but with the pronouncement here. I mean, what's the consequence? In other words, in his case, if you say, well, if he never comes back, that's this case, you know, done deal, no worries. But the practice of what the judge did here, I mean, you know, what's the consequence and potential consequence? Is it, should have done supervised release, therefore, you know, got this step, or is this? Precisely as you said, in this case, there would be no consequence. In other cases, well, the only instance in which it would arise would be a deportable alien who did not receive a term of supervised release, who then returns to the United States illegally and is theoretically prosecuted under both 1326 and 2250. So it's a very cabined set of facts, and it is indeed in that, in that, in that. Well, if the court had imposed supervised release in order to impose SORNA, SORNA would have been a condition of supervised release, would it have not? Invariably, Your Honor, of course. Yes, of course. So if he came back into the United States, he's still liable. He could be thrown in, in jail even quicker for a violation of supervised release with SORNA than under this form of judgment that he's been given. So it seems to me, again, if anything, he's benefited by this situation, not harmed. I, short answer would be I don't know, Your Honor. The longer answer would be I believe you're probably correct. He would have been, assuming that he was detected. Appeals are not for the purpose of just, you know, I don't like, I don't like something unless the person who is appealing is affected by those. Well, and he's. Another way of putting harmless error, I suppose, but. And I would respectfully submit that he's not harmed. This is very hyper technical. So let me ask you one other sort of hypo. Assuming, not suggesting at all, that we'll do it. That's why we're asking questions. But let's take the question Judge Owen asked you. You know, we say it's error. We strike it. What's the teaching point for the trial judge? Okay, next time I'm going to impose supervised, I'm going to impose supervised release. A condition of which, one of the many conditions of which is to register under SORNA, which is already set out. The prophylactic that, you know, the judge says, okay, they said shouldn't do that. I thought I was trying to help him. So I'll impose a supervised release, notwithstanding that he's a deportable alien, body to body, but that way I connect up the SORNA requirement and I don't have to see this case again, right? Yes, Your Honor. In fact, I'm not trying to be far-fetched. I'm just trying to think through this. I mean, if I got it back down and I'm like, okay, I got the promise, not coming back, you know, we'll do, okay, next go around. I'll impose a supervised release anyway, put it here, blah, blah, blah, since it's a gray area. All right. And at some point, I would add that perhaps the sentencing commission would need to retool 5D1.1c, the provision that deportable aliens do not need supervised release, perhaps deportable aliens subject to SORNA registration do need supervised release. And I would say that the proper remedy, if we found this illegal, is not to strike that part. It is to vacate and remand for resentencing so that the judge can impose supervised release with SORNA if that is, because this was a pretty grotesque situation, even though it was a, I would try to engage this informant instead of a real victim, but a 13-year-old, for heaven's sake. In the span of approximately three days. Oh, and I should add one slight thing. The United States didn't actually lose the evidence according to the testimony at the rearrangement. There was some sort of, for lack of a better term, glitch in the online communication forum, which I believe is called Scout, and the people operating the system lost the initial communications between Mr. Acevedo and the undercover agent. From the information that we have still, they were in communication for a period of only two days when he went from informal communication based on her appearance in the posting to requesting a meeting for the purpose of sexual contact. Again, I would respectfully submit that there was no error. If the court disagrees, I would argue that it is harmless, and as Judge Jones said, perhaps the best solution to a truly unique set of facts would be to remand so that Judge Olvera could impose a term of supervised release, including, among other requirements, SORNA registration. If the court has no further questions. All right. Thank you, Mr. Baird. We know you've been around a while, so we figured whatever we put to you, you'd know the answers, or have an answer, I suppose it might be. I try my best, Your Honor. I try my best. Thank you. Appreciate it. Thank you. Likewise, Mr. Howes, you've been around a while. You've seen a lot of these, so our questions are put to you. I know that I've got some work to do to get you guys back on my side, but I'm going to do my best. Not the you guys again. We're going to put a sign up here that says, we are not you guys, okay? That's very offensive. We understand it's the parlance of out there, but respectfully, just don't have it. I don't even like it for waiters at restaurants, but this is a really important- Your Honors, I apologize. It's not prejudicial to your argument. I hope not. I hope not, and I want to be very clear that this is a serious matter here, and I really want the court to take this seriously, for one- We don't take it seriously that much as a given. That's why we're asking so many- One, that's why we granted oral argument to it. Number two, that's why we've asked so many questions about it, pushing forth and trying to figure it out in terms of the statute, the in-allineations. In some ways, it seems like it's one of these tweeners. It's in between some surface. There's nothing expressly on it, et cetera. You make an argument, and that's why we're trying to get it right. You're right, Chief Judge Stewart, but the problem is, is that the criminal law is not a place where there are tweeners. The due process clause requires fair warning of the potential punishments of conduct. And so, and that's the specific punishment that is meted out for any statutory violation. That's why there has to be express statutory authorization for any punishment that's imposed as a result of a law, part of a lawful sentence. 3742 requires this court to review whether or not a sentence is imposed in violation of law. And if the court finds that a sentence is imposed in violation of law under 3742F1, it shall remand with instructions, with appropriate instructions. Here, Judge Jones, it's not appropriate to remand for a full resentencing because green law prohibits that. The government did not cross appeal on any issue. The government- No, they don't have to cross appeal. No, but your honor- I've never heard of that in the sentencing context. That's the- I don't know what you're talking about. It's precisely the context of green law, green law versus United States. I don't know green law. It's a Supreme Court case that held that even as to plain sentencing errors- When was green law decided? In 2009, your honor. We have, I have never, that was ten years ago and I've never seen it applied in this court. So I guess we're just- This court has cited it on numerous occasions, Judge Jones. Good for you. Did you cite it in your brief to us? No, because I didn't anticipate- You thought it was too obvious, I'm sure. Because it is obvious, the cross appeal rule is inveterate and certain as Justice Ginsburg said in her green law opinion. And so if the government had a problem with Judge Olvera's discretionary decision not to impose supervised release, it's remedied. I'm very sorry, but I mean, we have claims of illegal and inappropriate sentences all the time. And if we agree, which we do quite often, we vacate and put someone to the criminal rules. Right, and this court's rule is the mandate rule. And the mandate rule says that the only thing that's fairly within the judge's purview on remand are the things that flow from the sentence. The district judge exercised its discretion not to give supervised release here. That is a final judgment and the United States didn't appeal it. And so it can't now come back and say, well, we think you should have imposed supervised release on remand. But you better, if you think you're going to argue that, which was not argued anywhere here, then you need to put it in a 28-J letter. I will do that as soon as I can, Judge Jones. I will put green law and whatever else cases I can, and well, not whatever I can, but anything that's relevant to that decision, including maybe some cases from this court relying on green law. I don't have much time left, so I want to make sure I hit the, again, the authorization here is what's important, the statutory authorization. It's just, we're not, Mr. Acevedo has to comply with SORNA. I have advised him he needs to comply with SORNA. In the future, if he came back, he should, of course, comply with SORNA. No one is arguing he shouldn't. It's just whether or not this is an unlawful order and whether or not it presents potential punishment in the future. It could be used in a future SORNA prosecution. If the United States was to do that, if we didn't appeal this and argue that it was invalid, the United States could use that in plea negotiations to say we acquiesced and point to the statement of reasons. And so that's why we do have an interest in correcting the statement of reasons, which is the appropriate remedy in this case. And we also, I just think that that, if your honors would like me to point you to a case. United States versus Nolan is cited in our brief. It's a 2006 case, and in that case, it deals with restitution. But this court specifically recognized that for federal tax evasion, restitution is not something the district court may order. And it held that even though it could have been imposed as supervised release if the facts supported it, the facts did not support it, and therefore, that represented an unlawful order of restitution, and the result was to vacate it. And then the last thing I will say, if you'll permit me, Chief Judge Stewart, is Judge Owen, you joined an opinion in the next year in 2007, United States versus Ortiz. It's an unpublished opinion, but it's also cited in our brief in the remedy section in the blue brief. And in that case, there was a $500 ankle monitor order that the judge imposed. And this court recognized that that was, the district court didn't have lawful authority to impose that order. And that it was, therefore, an unlawful aspect of the sentence, and it vacated it. And that's all we're asking the court to do here. All right. Thank you, your honors. I'll submit the case. Very, thank you. All right, the case will be submitted. All right, Mr.